# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIRNELL WILLIAMS, #B58000, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18−cv–986−MJR |
| | ) |
| JOHN BALDWIN, | ) |
| KAREN JAIMET, | ) |
| WARDEN THOMPSON, | ) |
| CAROL MCBRIDE, | ) |
| DR. BRUTALET, | ) |
| LIEUTENANT SMITH, | ) |
| NURSE TINA, | ) |
| KIM REEDER, | ) |
| CHRIS BROWN, and | ) |
| ROBERT BLUM, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Tirnell Williams, an inmate in Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment and have violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-213 ("ADA") and the Rehabilitation Act, 29 U.S.C. §§ 794-94e. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
   (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

### **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff is "unable to use his legs and [has] limited mobility in his left arm." (Doc. 1, p. 4). He was transferred to Pinckneyville on February 19, 2018. (Doc. 1, p. 5). Defendants Blum and Tina recognized that Plaintiff required a significant amount of catheters, urine bags, diapers, lubricant, and sterile gloves due to his serious medical needs. *Id.* These supplies prevent irreparable harm that Plaintiff would otherwise suffer. *Id.* Blum and Tina have not given Plaintiff the sterile gloves, lubricant, urine bags, and catheters he needs, forcing him to reuse catheters numerous times. *Id.*

2

On March 26, 2018, Defendants Thompson, Smith, McBride, and Brown placed Plaintiff in segregation under investigative status in an inaccessible cell "incapable of accommodating [Plaintiff's] disabilities." *Id.* The cell did not have soap, towels, toothpaste, or a toothbrush. *Id.* Defendants "recognized that the cell was inaccessible," in that it was without bed rails or a wheelchair accessible bed, toilet, or shower. *Id.* Plaintiff told Thompson, Smith, McBride, and Brown that they were violating the ADA. *Id.* On April 1, 2018, Reeder and three unknown nurses denied Plaintiff his urine bag, catheters, and lubricant, causing Plaintiff to reuse the same catheter from April 1, 2018 to April 9, 2018. *Id.*

On March 29, 2018, Defendant Brutalet "was manipulated by security to take Plaintiff off of his seizure and pain med[ication]." (Doc. 1, p. 6). Plaintiff told him that he was making "a deadly and malicious error." *Id.* Because of Brutalet's actions, Plaintiff has had numerous seizures. *Id.* On March 31, 2018, Plaintiff had an epileptic seizure and fell out of bed. *Id.* His seizure is attributable to Brutalet taking his medications, and he fell because Brown, Thompson, McBride, and Smith chose to house Plaintiff in an inaccessible unit for the mentally ill. *Id.* Defendant Reeder responded to Plaintiff by checking his vitals only. *Id.* He failed to place Plaintiff on the doctor's call list, and Plaintiff did not have a pen to request a doctor. *Id.*

"At all times relevant, each individual defendant was aware of Plaintiff's inadequate medical supplies and that he needed an accessible shower, toilet, and bed with rails for his safety and to accommodate his disability." *Id.* As a result of the defendants' deliberate indifference to Plaintiff's needs, he has suffered from "severe pain, unnecessary medical complications, emotional distress, and continuous seizures." *Id.* These individuals who have failed to provide Plaintiff adequate healthcare and have assigned him to an inaccessible housing unit were employees of Baldwin and Jaimet during the relevant time. (Doc. 1, p. 7).

Plaintiff is a diabetic, but "medical staff refused to treat Plaintiff's diabetes." (Doc. 1, p. 8). When he arrived at Pinckneyville, his medical records indicated that his sugar level was at 82. *Id.* Blum told Plaintiff that he did not need anything. *Id.* Plaintiff's levels are not being monitored. *Id.* After Brutalet took Plaintiff off his seizure medication, Plaintiff had five seizures, so he began buying his seizure medication from other inmates to help prevent them. *Id.*

Plaintiff got a urinary tract infection. *Id.* He submitted numerous requests to Brown, Brutalet, and Thompson. (Doc. 1-1, p. 7). He ultimately bought antibiotics from another inmate, which cured it. (Doc. 1, p. 8). Tina told Blum that Plaintiff did not need lubricant or sterile gloves upon his arrival February 19, 2018, despite the fact that Plaintiff's medical records indicate he requires them. *Id.* Plaintiff has never received gloves, and he only received lubricant as of April 10, 2018. *Id.* He uses the gloves when he discharges his excrement, and without them, he has been forced to use his exposed finger. *Id.* Plaintiff also uses the gloves to "cath" himself, which is standard. *Id.* The lack of gloves and the fact that he was forced to use the same catheter close to 40 times led to his infection. *Id.*

The above information has been sent to Defendants Brown, Thompson, and Brutalet. *Id.* Plaintiff told Brown and Thompson that the information is in his medical records. *Id.* He also sent Brown and Thompson messages each day after he was taken off his seizure medication. (Doc. 1-1, p. 5). Both responded by telling Plaintiff that there was no space for him because there were no ADA cells for inmates in segregation. *Id.*; (Doc. 1, p. 9).

"Plaintiff is not able to receive law library being in [segregation]." (Doc. 1, p. 9). When he sends requests, he is told that he has to wait until he gets out. *Id.*

The medical staff has a custom under which inmates turn in their used catheters once per week. *Id.* This forces inmates to keep used catheters in their cell without a biohazard bag, or

4

any bag, resulting in a repugnant odor. *Id.* Diapers also just lay around the cell until inmates are able to throw them away when they come out. (Doc. 1, p. 9); (Doc. 1-1, p. 1).

Jaimet erred in appointing Brown as the ADA Coordinator. (Doc. 1-1, p. 1). "The law states Warden of Programs is the facility ADA Coordinator, which is Defendant Thompson." *Id.* Jaimet did not know this until Plaintiff told him. *Id.*

The bag Plaintiff receives is an overnight urine bag, "which is not to be reused." *Id.* Plaintiff received one overnight bag with two connectors for an entire week. *Id.* Staff refuses to give him more. *Id.* Plaintiff is only able to use his bag for two days because when he cleans his body, the connectors have to come off. *Id.* His medical records indicate that he "cath[s] 4 to 6 times a day" and needs 21 catheters per week. *Id.* Instead, he is forced to reuse them 10 times until he receives more. *Id.*

Plaintiff has sent numerous requests to each defendant but has been ignored. (Doc. 1-1, p. 2). Plaintiff is not able to shower, and he does not have a medical call button. *Id.*

On April 13, 2018, Plaintiff went to sick call. (Doc. 1-1, p. 3). He saw Nurse Laura and told her that he had four seizures after March 29, 2018. *Id.* She told him that there was nothing they could do. *Id.* Plaintiff told her that his levels needed to be checked, but she responded that there was nothing they could do and that he had a seizure clinic scheduled for June. *Id.*

Plaintiff also requested diabetes treatment, a shower and bed with rails, a box to place soiled diapers and used catheters, and treatment for diaper rashes and "excruciating pain." *Id.* He was told to fill out another sick call request. *Id.* He was also told to contact Brown and Thompson about his shower, bed rails, and box request. *Id.* The nurse did not address any of Plaintiff's other medical needs or notify Brown or Thompson of Plaintiff's request. *Id.*

On April 5, 2018, Plaintiff was taken to another noncompliant cell. (Doc. 1-1, p. 6).

5

"The cells are extremely filthy." *Id.* Plaintiff has a urine bag that often leaks, and staff does not provide him with disinfectant, brooms, or mops to clean. *Id.* Plaintiff has taught his cellmate how to respond to his seizures because he has had three seizures with that cellmate where "no one came and he could not get anyone's attention due to no call buttons." (Doc. 1-1, pp. 6-7).

Plaintiff believes that he should not be in segregation because staff refused to call his witnesses at his ticket hearing, and one of the people on the hearing committee was the individual to whom he gave the flash drives on which his ticket was based. (Doc. 1-1, pp. 7-8). This is in violation of the policy that forbids a person who is part of a disciplinary report from serving on the disciplinary committee for that report. (Doc. 1-1, p. 8). Policy also "gives 3 days to serve the ticket to the offender." *Id.* Though Plaintiff's ticket indicated that Plaintiff was served on April 6, 2018, Plaintiff was actually served April 10, 2018 by Lt. Wrangler, the day before the April 11, 2018 hearing. *Id.*; (Doc. 1-1, p. 14). The ticket had Lt. Hick's signature. *Id.*

Plaintiff seeks monetary and preliminary injunctive relief. (Doc. 1, p. 7).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 8 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs related to his immobility, including his need for catheters and related equipment and a handicap accessible cell and shower, in violation of the Eighth Amendment.
>
> **Count 2 –** Defendants violated the ADA and Rehabilitation Act by failing to accommodate Plaintiff's needs related to his immobility, including his need for catheters and related equipment and a handicap accessible cell and shower.

**Count 3 –** Defendants subjected Plaintiff to unconstitutional conditions of confinement by placing him in a dirty cell without adequate cleaning supplies, forcing him to keep used diapers and catheter bags in his cell for extended periods, and leaving him without various hygiene items.

**Count 4 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving his seizures and his injuries associated therewith in violation of the Eighth Amendment.

**Count 5 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving his diabetes in violation of the Eighth Amendment.

**Count 6 –** Defendants violated Plaintiff's right to access the courts by blocking his access to the law library while he was in segregation.

**Count 7 –** Warden Jaimet violated Plaintiff's rights by appointing the wrong ADA Coordinator.

**Count 8 –** Defendants violated Plaintiff's due process rights by subjecting him to segregation after failing to call his witnesses at his disciplinary hearing and having a hearing committee member who was involved in the underlying incident.

As discussed in more detail below, Counts 1 through 4 will be allowed to proceed past threshold, and Counts 5 through 8 will be dismissed without prejudice for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard. To the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Complaint but not included in the case caption or list of defendants include: three unknown nurses, Nurse Laura, Lt. Wrangler, and Lt. Hicks.

Further, to the extent Plaintiff is bringing any of his claims against Defendant Baldwin in his individual capacity based solely on the actions of Illinois Department of Corrections

("IDOC") employees, such claims must fail. In the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Because plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint, and Plaintiff failed to personally associate Baldwin with any claims outside of his supervisory role over IDOC employees, he will be dismissed from each count, with one exception. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Baldwin is the appropriate defendant for Count 2, so he will remain a defendant in his official capacity for that claim only. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (additional citations omitted).

### **Counts 1, 4, and 5 - Deliberate Indifference to Medical Needs**

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Court finds that, at this early stage, Plaintiff has satisfied this standard against Brutalet, Reeder, Brown, Thompson, McBride, Jaimet, Blum, Tina, and Smith with respect to Count 1 and Brutalet, Reeder, Brown, Thompson, and Jaimet with respect to Count 4. Counts 1

8

and 4 will therefore proceed past the threshold stage.

Plaintiff has failed to satisfy the subjective component against any defendant with respect to Count 5, however, rendering it subject to dismissal. Though the Court recognizes that diabetes is a serious illness, the only defendant Plaintiff has associated with his diabetes claim is Blum. His allegations against Blum are limited to her telling him that he did not need anything for his diabetes when he arrived at Pinckneyville. This statement may have been true, and does not indicate a conscious disregard of a substantial risk of serious harm to Plaintiff on the part of Blum without more. Though Plaintiff claims that his levels were not monitored thereafter and medical staff refuses to treat his diabetes, these allegations are not clearly associated with any defendant and will therefore not be attributed to one. For these reasons, Count 5 will be dismissed without prejudice as against all of the defendants.

## **Count 2 – ADA and Rehabilitation Act**

Count 2 is premised upon some of the same allegations that underpinned Count 1 regarding the defendants' failure to accommodate Plaintiff's disability by assigning him to a handicap inaccessible cell, without a properly accessible shower, toilet, or bed, and failing to provide him with the appropriate catheter equipment and bags to enable him to shower regularly and use sanitary equipment in conjunction with his necessary bodily functions. The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012).

In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was

either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Jaros*, 684 F.3d at 667. Thus, the two statutory schemes are applicable to this situation. "Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672. The Complaint indicates that Plaintiff is wheelchair bound and uses a catheter and diapers. The allegations therefore suggest that Plaintiff suffers from a disability as defined in the ADA and Rehabilitation Act.

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court concluded that a disabled inmate can sue the State for money damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" if the conduct in question also constitutes deliberate indifference in violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 157–159. The Seventh Circuit has also recognized that, in a prison setting, access to meals and certain housing facilities, including showers, toilets and sinks, are among the programs and activities protected by the ADA and the Rehabilitation Act. *Jaros*, 684 F.3d at 672; *see also Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2010); *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998). Further, if showers and meals are considered "programs" or "activities" which must be accessible to disabled inmates, "then the basic need for an adequately accessible bed may also

10

be viewed as such." *See Simmons v. Illinois Department of Corrections*, No. 14-cv-479-JPG, 2014 WL 2159000, at *4 (S.D. Ill. May 23, 2014). Plaintiff alleges that prison officials refused to house him in a handicap accessible cell and failed to provide him with adequate catheters, bags, gloves, and lubricant to adequately facilitate his bodily functions and enable him to shower regularly. Taking these allegations as true, the Court finds that Plaintiff has adequately alleged that he was deprived of "programs" protected by the ADA and Rehabilitation Act.

Plaintiff's need for an accommodation seems "obvious" and sufficient to impute that knowledge to prison officials. *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196–98 (10th Cir. 2007); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006). Furthermore, Plaintiff made the defendants aware of his need for accommodation by writing letters or informing them in person. Consequently, Count 2 generally states colorable ADA and Rehabilitation Act claims, but that does not end the analysis.

Although Plaintiff has named a number of officials in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted). Each of the defendants, other than Defendant Baldwin, will therefore be dismissed with prejudice from Count 2, as they are not susceptible to Plaintiff's claims under the ADA or Rehabilitation Act. Count 2 shall therefore only proceed against Baldwin, in his official capacity only.

### Count 3 - Unconstitutional Conditions of Confinement

To prevail on an Eighth Amendment claim based on inadequate prison conditions, the

prisoner must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted). "A state must provide ... reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1981). Exposure to human waste has been associated with colorable conditions of confinement claims. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff claims he has been forced to keep his used urine bags and diapers in his cell for extended periods, resulting in a horrid smell. He also has a leaky urine bag, and he is not given cleaning supplies to sanitize his cell despite this. Plaintiff was also deprived of standard hygiene materials such as soap, towels, toothpaste, or a toothbrush by the defendants. Whether each of these conditions would state a claim separately is irrelevant. Considering the alleged conditions in combination, the Court finds that Plaintiff has alleged enough to satisfy the first element of his conditions of confinement claim. With respect to the second element, Plaintiff has alleged enough facts at this stage to implicate Thompson, Smith, McBride, Brown, and Jaimet for placing him in the cell(s) with these conditions and/or failing to respond to Plaintiff's written

complaints regarding them. Count 3 will therefore proceed against Thompson, Smith, McBride, Brown, and Jaimet and will be dismissed without prejudice against the remaining defendants.

### Count 6 - Law Library

Plaintiff claims that he is being denied access to the law library. While this may state a constitutional claim in some circumstances, Plaintiff has failed to adequately associate any of the named defendants with this claim. For this reason, Count 6 will be dismissed without prejudice.

### Count 7 - ADA Coordinator

Plaintiff claims that Jaimet erred in appointing Brown as the ADA Coordinator because she is not the Warden of Programs, and "[t]he law states Warden of Programs is the facility ADA Coordinator." (Doc. 1-1, p. 1). It is not entirely clear if Plaintiff desires for this allegation to serve as the basis for an independent claim against Jaimet. Regardless, he has not indicated that this allegedly inappropriate appointment resulted in a constitutional deprivation of any kind or violated his rights under the ADA or Rehabilitation Act. Without any indication of how this appointment may have negatively affected Plaintiff personally, Plaintiff has failed to state any claim based on these allegations. Count 7 will therefore be dismissed without prejudice.

### Count 8 - Due Process

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff claims that he was not allowed to call witnesses and that a person who was involved in and witnessed the alleged violation served on the hearing committee. This suggests that the hearing committee may have found Plaintiff guilty without satisfying the requirements of *Wolff*. That is an inquiry for another day, however, because Plaintiff has failed to sufficiently implicate any of the named defendants for the conduct underlying his due process claim.

Plaintiff has not specifically named any of the hearing committee members as defendants in this case. Further, though Plaintiff attached to the Complaint a letter dated April 12, 2018 to Warden Jaimet outlining the alleged due process violations and seeking Jaimet's intervention, there is no indication that Jaimet received the letter or will fail to act on it when she does, especially considering the recent date of the letter. Plaintiff has otherwise not provided the Court with any information that would elevate Jaimet's involvement in the alleged violations to the point of implicating her for them. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.") (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Further, given how recently the hearing occurred, the Court has its doubts about whether Plaintiff has exhausted his administrative remedies with respect to this due process claim. For the foregoing reasons, Count 8 will be dismissed without prejudice.

## **Pending Motions**

Plaintiff has filed a Motion for Emergency Preliminary Injunction (Doc. 2) which is **REFERRED** to United States Magistrate Stephen C. Williams for a decision.[1]

---

[1] Plaintiff notes that this is a request for "an injunction pursuant to Federal R. Civ. P. 65(3)." (Doc. 2, p. 1). No such provision exists, though Rule 65(b)(3) addresses the acceleration of preliminary injunction hearings. Based on this, the Court will assume that Plaintiff seeks a preliminary injunction pursuant to Rule 65(a) as opposed to a Temporary Restraining Order pursuant to Rule 65(b), but that he is hoping the hearing will be set "at the earliest possible time" as Rule 65(b)(3) provides.

Plaintiff has filed a Motion for Leave to Proceed *In Forma Pauperis* (Doc. 3) which will be addressed in a separate order of this Court.

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 4) which is **REFERRED** to United States Magistrate Stephen C. Williams for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **BRUTALET**, **REEDER**, **BROWN**, **THOMPSON**, **JAIMET**, **BLUM**, **TINA**, **MCBRIDE**, and **SMITH**. This claim is **DISMISSED** without prejudice against **BALDWIN** for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **BALDWIN** (official capacity only). This claim is **DISMISSED** without prejudice against all other defendants, including Baldwin in his individual capacity, for the reasons stated above.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **BROWN**, **THOMPSON**, **JAIMET**, **MCBRIDE**, and **SMITH**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **BRUTALET**, **REEDER**, **BROWN**, **THOMPSON**, and **JAIMET**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNTS 5**, **6**, **7**, and **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **BALDWIN** (individual capacity only) is

**DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** through **4** the Clerk of Court shall prepare for **BALDWIN** (official capacity only), **BRUTALET**, **REEDER**, **BROWN**, **THOMPSON**, **JAIMET**, **BLUM**, **TINA**, **MCBRIDE**, and **SMITH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, including a decision on the Motion for Appointment of Counsel (Doc. 4) and handling of the Motion for Preliminary Injunction

(Doc. 2). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 25, 2018**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**